we have the four cases this morning and the first is United States versus Stafford number 19-3833 and we'll begin with you uh Mr. McMahon yes thank you very much your honor uh John McMahon appearing on behalf of the appellant Khalil Stafford and your honor if it pleases this court uh it was my intention to begin with the juror issue specifically that's fine do you wish to reserve any time for rebuttal thank you for reminding me your honor yes could I reserve three minutes absolutely go right ahead thank you very much your honor the issue really here is that on the eve of deliberations three of Mr. Stafford's who are deliberating or potentially about to be deliberating jurors were excused with no legitimate basis in the record that can be we'll stop you there Mr. McMahon we're reviewing this for abusive discretion is that right that is absolutely correct your honor and so you're telling me there was absolutely no legitimate reason notwithstanding the court's voir dire of the jurors that is exactly what I'm saying to this court your honor okay so I make sure I understand your arguments yes your honor and I think it's very important to just look at where this all began this began with the court on the morning that there was deliberations were going to begin the only thing that was remaining was the government's rebuttal summation and the judge called everyone in said that there had been an incident that was reported to her by the marshals this is critical she said to the council that the marshals had informed her that there was a discussion on one of the vans that contained some of the jurors and that that discussion revolved around a juror indicating that she communication with her sister that morning either by Facebook or some other electronic means and that the sister reported either that she herself had been a juror on a case where a guilty verdict was returned and later it was turned the person was found not guilty or determined to be not guilty and or someone that the sister was close to that conversation never occurred and we learned that through the voir dire but what happened at that point was the government before any voir dire moved to strike both of those jurors saying that one they violated the court's instructions clearly they did not as we stated in our brief all the court ever advised the jurors was they could not discuss this case they were free to discuss any other matter anything of correct and and no one ever eventually argued that that was the case by the court the evasive jurors and if we credit the district judge's finding that they were evasive isn't that a legitimate basis on which we can't find an abusive discretion if the court was correct in that finding and the evasiveness did in fact give rise to a legitimate concern then yes your honor but what i'm saying to the court is neither of those things are correct but aren't we are we entitled to look at the district court's um credibility finding and give it deference i mean the district court judge was the one who was in the room with the people she's the one who spoke with the jurors and she found them to be evasive aren't or shouldn't we give deference to her credibility finding or her determination on that the record doesn't bear out her finding judge and i acknowledged in my brief that that's a very difficult thing to do and your honor brings up a good point we weren't in the room so we know there's a lot more than language that goes into any of these things but if i could just point something out that i think is is here your honor um and i'm going to i'm going to speak to juror number five on this issue because that's one of the jurors that the judge really honed in on this this theory of evasiveness at page um 3161 of the record and in commenting about juror number five the judge found her evasive because she didn't reveal the conversation about the other systems of justice initially and had to be drawn out of her that's not correct if we just go back a few pages in the record to page 3122 in answering the judge's questions trying to answer the judge's questions juror number five said would you consider one of the statements what our legal system is here like she wants to tell her about that conversation and the judge says no no i'm not interested and then what happens when we get to page 3124 of the record that juror number five again volunteers to the judge but you don't want to hear about the books and somebody mentioning juror service in another country and then finally the judge lets her discuss that so i if i could just take one more step back judge to where i was beginning which is when the judge was initially questioning these jurors she was doing it in her mind that there was a conversation that someone's sister had related information we know from all of the jurors that conversation never took place it's understandable the marshal's driving the van he can't keep track of these conversations he's wrong so when the voir dire comes out we find out he's wrong but at the beginning of the voir dire the judge was concerned why isn't anyone telling me about this conversation no one was mentioning the conversation because the conversation never occurred so what the judge was seeing as evasiveness was probably quite frankly confusion on the part of these jurors as to what's going on let's assume this conversation or this alleged conversation took place pre-trial and they were absolutely not if i could just draw the distinction what the judge said which which was very disturbing at some level was that she was concerned that someone who discussed the fact that innocent people are sometimes wrongfully convicted would not be eligible to serve the question that needs to be asked after that judge is well knowing that which by the way we all know but knowing that would that affect your ability to serve in this case because judge if i could honestly say sometimes the juror will say yes that's too much for me yes i can't do that i can't have someone's life in my hands i've picked many jurors sometimes that happens but most times a juror is going to say no i know that happens but you know we're here to make sure it doesn't happen and quite frankly that is why they are here so for a jury before we go on to the next issue let's just assume even though it's a very steep uphill climb that the district court abuses discretion in replacing these jurors in particular juror number five what's the appropriate remedy you're asking for i'm asking for the case to be reversed and remanded back for a new trial judge and and there's no way you could we don't know what juror five would do so aren't we then in harmless error land because i don't see and i understand that question completely because it i understand how can i say to this court that the result would have been different right i can't read anyone's mind either but what i will say is there was no basis to excuse her the defense attorney had indicated remember we're through summations that this was a juror that was favorable to the defense in his opinion and no one disputed that no one said you're crazy i watched that juror how do you even think of that we if we both any of us have tried cases we know one thing we know at the end of the case when you're summing up you know the people who are listening to you and maybe for you and you know the people who aren't so the you don't know that that's that's your best guess on on your best day you don't know that nobody knows that come on that's the best that anyone can ever do though isn't it judge right but you don't know but there's there's a giant leap of faith there you don't know well the reality judge is i think we need to go back to the united states versus penn where this court started cited united states versus panetta and if there's no legitimate basis for the judge's excusal of these jurors then i think there needs to be a remedy as as many circuits have said there's no you know absolute like if you do this but can you say any case in this circuit any third circuit case where the court found an abusive discretion in a decision to remove or retain an existing juror or where that was done and the remedy that you're seeking a new trial was granted no your honor maybe that's a good segue to the the second issue the uh the instructions now your your defense theory of trial was that this was uh mr stafford was a purely non-violent peacemaker when he arrived on the scene and yet now you're trying to say that there's an alternative theory that he was so caught up in the heat of passion that he only committed manslaughter rather than murder those appear to be diametrically opposite how do you reconcile those two because your honor in this case the judge instructed the jurors that they needed to find mr stafford guilty of murder as it is as it exists in the state of court with the case law that if the elements of passion provocation are present the court has an obligation to charge that element because that's an additional element that needs to be actually disproved by the government here and it has to be charged even if it's contrary to the defendant's testimony here he testified and and let's just think about that and it makes logical sense and our in new jersey that's what the court say murder requires mr stafford testified jurors don't believe him this story makes no sense okay what do we do doesn't find him guilty just because the story doesn't make sense we revert to an analysis of the government's proofs when we look at the government's proofs their proofs were by the way of torel their main witness that when he encountered mr stafford after a gun had been pulled on him by iron williams that he was in a heated state that he was upset that's what he said he said he did moment upset that they he just wanted to go back to the scene and confront him and it was torel that said we we don't have to have guns and when they went back that again a gun was pulled on him before anything mr mcmahon are you suggesting that in all cases or cases in new jersey at least that a federal judge would need to independently consider lesser included offenses to this to the crime i mean that seems awfully broad and to put a lot of obligation on the judge when it's something that even the defense didn't request well judge i understand i'm asking this i'm asking you to review this i understand that but your honor with regard to your question here this is critical for and i can let me just step back when you say lesser included offense yes it is but it's more than that it adds an element to murder that must be disproved by the government here if my client is to be convicted of murder under new jersey law and that's what is being new jersey law and we're well the government the government made an argument two days ago in its april 19 submission to us that based on the sixth circuit opinion in fowler in our 1979 decision of foresight that a provocation instruction which is the in effect the heat of passion could not have been available here because there's no such thing as a lesser included offense so you're saying you're saying okay that may be correct this is not a lesser included offense it's an element how in the world is it an element it is an element judge under new jersey law it's an element that the state must disprove that the person acted on in the heat of passion with reasonable under reasonable provocation so that is an element of murder in new jersey when these facts are apparent it might be an element in new jersey but how is it a predicate rico violent offense as the statute as the statute's written because what would happen if it was correctly charged is the jurors would have been advised that they had to make that additional finding as part of their murder finding which is specifically has the government disproved that one of the four elements of and if they if they say no they didn't then it would be a not guilty verdict on murder and the rico and the by car counts would fail but isn't that reading language into the statute that's not there new jersey's murder statute is is comprised of both the statutory language and the case law judge that is and and that's what we're talking about here the law of the state of new jersey i understand that that's one thing i'm familiar with so i i know that you know clearly and that's what would be required why don't why don't we hear from mr ramsey and we'll get you back on rebuttal good morning your honors may it please the court richard ramsey on behalf of the united states uh i guess i would start with um counsel's um suggestion that that there's an element of provocation in the murder statute in new jersey and i don't think that's correct that is a part of the manslaughter um statute but murder doesn't require you or doesn't require the government to disprove provocation so that's the first thing but just big picture here i think the record allows this court to affirm stafford's conviction for two straightforward reasons relevant to this argument the first is that even if mr stafford never invited or waived the instructional error he now claims he can't show that there was a rational basis for the instruction and he can't show that no rational jury would have convicted him under the for federal murder based on the evidence of the trial were you the were you the trial attorney here i was one of the trial yes judge one of the things just just at the outset i know you stated in your brief or whoever wrote the brief that somehow the instructions that were submitted to the court were joint instructions but when we looked at it it appears that they were submitted by the government and did you at the time did you indicate to the court that they were the result of a collaborative effort we asked the court a few days before that we submitted the charges we told the we asked the court whether the court would be interested in the charges the government did take a lead in drafting the charges the the government also provided those charges to defense council before even submitting them to the court and in several parts of the record the defense council made a and at the end told the court that they agreed with the instructions except for a few points all right now you just sent us you sent us two letters in the last week or so one on april 13th and one of the 19th uh and the one of 13th you argued that stafford could have pursued a heat of passion defense only by testifying untruthfully correct judge but we allow defendants to pursue you know inconsistent theories to another we do and um but the supreme court has put a limitation on on the extent of an inconsistent defenses if there's an inconsistent defense that requires untruthful testimony the court puts a cap on that the supreme court puts a cap on that but in but in new jersey in the state versus powell didn't the new jersey court say that provocation manslaughter instruction was appropriate even when the defendant testified that he had an alibi and was not involved in the homicide that seems to allow inconsistent and perhaps even a testimony that is is would be committing perjury that would be true in before the uh the statute was enacted in um in the i guess i should back them and say mauricio and cristiano i believe is the other case in new jersey they require the the require the defendant to or the court to assess whether or not there was a rational basis for the instruction and so just because that there was inconsistent defenses in the powell case that that that line that case really is no longer relevant after the enactment of a statute that says hey you need to have a rational basis for this instruction let me go back to the first issue for a minute mr ramsey council has argued to us that this conversation this purported conversation on the van never took place is that your understanding of the record that's not my understanding at all judge uh this the the u.s marshal came to the he overheard and the court took that under advisement she advised the attorneys of the of what the scope or the likely scope of the conversation she didn't know none of the parties knew and an inquiry was conducted with everyone's consent and so for council to say now that this conversation never happened even after jurors said on the record that a conversation did happen and it took a while for them to get there but three jurors heard the conversation i'm going to ask you the same question i asked your opposing council let's assume that the district court abuses discretion and i realize you don't agree with that but just assume for the for the moment that it abuses discretion in replacing at least juror five what would the appropriate remedy be the appropriate remedy in this case is replacing the jurors uh i mean as appropriate remedy b if it was improper and the defendant could show prejudice then it would be a retrial but the point you're saying you don't have to show prejudice based on a hunch that juror five was appeared to be listening in such a way that that particular person might have been to mr mcmahon's client that's correct judge and i do want to point out that it is troubling to me that that assumption is made and the only reference or the only basis for that assumption is the fact that the the juror was african-american that's what the briefing suggests and it's it's not something that i think this court should sanction um or allow an interpretation simply because of someone's race that that person is going to be leaning one way or the other they did say the person was nodding in agreement at times i mean to be fair right i i do not know whether i have not seen in the record that the person was nodding i think the only reference was to the fact that she was african-american yeah you know when you when you have somebody with the experience that mr mcmahon does there's a sixth sense you get with respect to jurors and his impression almost from the outset was that this particular juror seemed to be listening in a way that he had a real chance of getting this particular person on his side now you know that and 50 cents in a small midwestern town might not get you a cup of coffee but you have to give somebody with that kind of experience some some deference because he's done it for so long well mr mcmahon wasn't trial counsel and mr mindy was and i i can't speak for mr mindy's impressions but um it's pure speculation at this point judge i mean we picked jurors both sides picked jurors who were designed to be fair and impartial that was what we thought and that's what we thought we were getting throughout the trial and the suggestion is or the defense counsel's comments both now and at trial beg the question of whether they actually thought they were picking jurors that were going to be fair and impartial that's the whole system and simply because someone is nodding doesn't mean that they agree with everything you say or that they can't or that they can't be persuaded otherwise when they're in the privacy of a jury room talking with other folks right correct judge and at the end of the day this conversation is is really fraught with jury nullification we're talking about a fear that that the that jurors or at least one juror brought decided one day to bring to the attention of other jurors and other jurors engaging in that conversation in some way minimal or not so you know the judge had every right to to be suspicious of the fact of whether or not these jurors at this point in the trial could be fair and impartial based on that simple conversation and i take it in this case the juror the alternate jurors were presented with all the evidence they were presented with the charge and they were appropriately instructed when they served as the the actual jurors correct that's correct judge they were there from the very beginning and and both sides agreed that these folks would be the alternate jurors that's correct judge and i would add to that when the government moved to strike the two initial jurors the two jurors that uh that the marshal mentioned um were part of this conversation the government didn't know who the jurors were we moved to strike based on this idea that during the notification was could be part of the reason or could be the the long-term effect of of having jurors on a panel um that are already thinking about whether or not they would be afraid of convicting or whether or not they would be afraid of convicting someone because this person might be innocent any further questions from my colleagues no no thank you okay so let's let's hear back on rebuttal with mr mcmahon just briefly before i get to this thank you your honor just briefly before i get back to the jury sure i just want to make mention of this there is no statute that has overruled baricio or pal in the state of new jersey that's good law there's no statute that for a number of reasons one it is correct i wasn't the council i cite the trial counsel's um comments in my brief where he basically says i'll start with jury number five an african-american woman who i would submit to the court has seen receptive to the defense's theory of the case and our message i and i think the government has recognized that so basically he's making a made in the courtroom that no one contradicts another issue is yeah the race is important not because every black juror is going to be for a black defendant believe me i know that's not true okay just like every white juror is not for a white defendant or against a black defendant but it did reduce the amount of african-americans on the jury by either a third or half depending on whether there were originally three or originally but that but that but that type of bats but that type of bats an argument was never made it was never made judge but i think it's it's it's important to note here i think it's real and i think what's more important is this the government's contention that because jurors are having a conversation and and just go back to it was the judge in her initial instructions when they first all got together who said we have the greatest system in the world this jury system and when these jurors on that then we're having that exact conversation how much better this is how there was a case in spain where someone was wrongfully convicted and that's not a good thing there was never a cyst or anything like that a conversation about another system of justice where we don't have jurors that makes you disqualified to be a jury no that makes you qualified to be a juror that's what we want from our jurors the conversation to take place or not i've heard you to tell us that it didn't take place the conversation about somebody's sister never took place when we heard about it judge and i have it in my brief i detail it with each juror what they said it was a conversation about how our system of justice is better the juror number i believe it was 10 mentioned spain and this incident in spain somebody who wasn't excused mentioned there's no jurors in india the conversation was fine no one ever asked these jurors on the voir dire hey the fact that someone was wrongfully convicted in spain would that have any effect on you here because guess what the three jurors who embraced the concepts of justice we want embraced and and that's that's wrong and there was no legitimate basis for that decision thank you any further questions judge no thank you okay thank you very much thank you to both council for being with us today and we'll take the matter under advisement very much appreciated